NOT DESIGNATED FOR PUBLICATION

No. 123,637

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN WILLIAM EUGENE BILBREY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed April 15, 2022. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., GARDNER, J., and PATRICK MCANANY, S.J.

PER CURIAM: Dustin William Eugene Bilbrey appeals the district court's denial of his presentence motion to withdraw his plea, which argued ineffective assistance of his counsel and Bilbrey's inability to see all the evidence against him. The district court found that Bilbrey failed to show good cause to withdraw his plea. Having reviewed the record and finding no abuse of discretion, we affirm.

1

*Factual and Procedural Background*

In May 2019, the State charged Bilbrey with aggravated robbery and aggravated assault, both felonies, and battery, a misdemeanor. The State later amended the complaint to include eight more felonies: two counts of conspiracy to commit aggravated robbery, aggravated robbery, aggravated battery, burglary of a vehicle, theft, conspiracy to commit burglary of a vehicle, and arson.

The district court appointed Bilbrey an attorney, John Sheahon. Bilbrey waived his right to a preliminary hearing, pleaded not guilty, and later moved to suppress statements he had made to Salina law enforcement officers in June 2019.

In November 2019, the State offered a plea agreement for a 138-month sentence. Although Bilbrey's attorney recommended that he accept it, Bilbrey insisted he wanted to see the video evidence against him. He told the district court he had not yet seen most of the video evidence or read witness statements the State had provided to his attorney in discovery, although he had asked for months to see it, and felt it was unfair to pressure him into making a decision without seeing the evidence. Still, Bilbrey agreed to a continuance and that time would be charged to the defense, and the State agreed to leave the plea offer open.

The parties again addressed a potential plea during a suppression hearing in January 2020. The State summarized the unsuccessful efforts to reach a plea agreement, then said that it would be moving that same day to preserve its ability to seek an upward durational departure after trial. Bilbrey again expressed his concern with not having a chance to review critical discovery. The State admitted that the videos were from security cameras that had recorded events leading to Bilbrey's most serious charges. When pressed by the district court, Bilbrey responded he wanted to see all the evidence against him before he decided on a plea and that he wanted a new lawyer.

2

So the topic turned to the efforts of Bilbrey's attorney, Sheahon. Sheahon told the district court that he had viewed the videos and that he had explained their contents to Bilbrey, but that there was no way to show Bilbrey videos in the jail where Bilbrey was confined. Sheahon had given Bilbrey a box of discovery that included everything but the videos. Bilbrey asked whether he had a right to view the videos, and the district court replied it did not know of any such right. The district court denied Bilbrey's request for new counsel, finding Bilbrey failed to prove "justifiable dissatisfaction," an "irreconcilable disagreement," or a "complete breakdown in communication" as was necessary for the court to appoint new counsel.

After reviewing the video of Bilbrey's statements to law enforcement, the district court suppressed the statements Bilbrey made after he invoked his *Miranda* rights. And as anticipated, the State moved for an upward durational departure that same day.

In March 2020, Bilbrey rejected another plea offer, and assured the court he knew the State had moved for an upward durational departure. The case thus proceeded to a jury trial.

On the morning of the jury trial, the State, Bilbrey, and Sheahon again discussed a plea agreement. During that meeting, the parties made two handwritten additions to the plea agreement: (1) that the State agreed not to charge Bilbrey's brother (Derrick Hansen) with methamphetamine possession in May 2019; and (2) that the State would leave open a plea offer of 62 months' jailtime for Bilbrey's co-defendant until a later date in March 2020. Bilbrey agreed to that plea and an agreement was reached.

During the plea hearing, Bilbrey told the district court he had not been pressured, threatened, or intimidated to enter the plea. Nor did he feel as though he had been treated unfairly. When the district court asked Bilbrey if he understood generally that his plea

3

was final and binding and that he would likely not be able to withdraw it in the future, Bilbrey stated he understood.

In accordance with the plea agreement, Bilbrey pleaded no contest to aggravated robbery, conspiracy to commit robbery, burglary, and arson, and the State dismissed the remaining charges with prejudice. The parties agreed on a recommended sentence of 111 months with Bilbrey free to seek a dispositional departure to probation and drug treatment. That same day, the State filed a second amended complaint reducing count 6 from conspiracy to commit aggravated robbery to conspiracy to commit robbery. Bilbrey later moved for a dispositional departure to probation.

In June 2020, before sentencing, Bilbrey moved pro se to withdraw his plea on grounds of ineffective assistance of counsel. Bilbrey made many specific claims, alleged that Shannon's representation "fell below a reasonable standard of objectiveness," and claimed that the State had coerced him to plea by threatening to incarcerate his brother.

The district court allowed Sheahon to withdraw, gave Bilbrey time to hire a lawyer, and then appointed an attorney when Bilbrey said he could not hire one himself. The court set the motion to withdraw Bilbrey's plea for an evidentiary hearing.

On the first day of that hearing, Bilbrey testified that Sheahon would disagree with him on whether he had seen *all* the State's evidence. Bilbrey testified he had no means to watch the videos (DVDs) in jail and could not be transferred to Sheahon's office to watch them there. He and Sheahon had reviewed only one video. Bilbrey and Sheahon "butted heads at every conversation about what [Bilbrey] felt needed to be done." Bilbrey claimed Sheahon would belittle him, make him feel stupid, and would not fully explain why he was or was not going to do something. Sheahon also made clerical errors, such as sending him papers with another person's name on it or with his name misspelled.

4

Bilbrey also testified that he felt pressured and threatened by Brock Abbey, the prosecutor, because:

- Abbey constantly told him he would withdraw the plea offer if Bilbrey did not accept it the moment Abbey presented it;
- Abbey threatened to arrest Hansen;
- Abbey threatened to file an arrest warrant for Hansen on the day of trial if Bilbrey did not plea; and
- Abbey threatened to file a departure motion the morning of trial if Bilbrey did not plea.

Bilbrey testified that he agreed to the plea because (1) his attorney refused to ask witnesses questions that Bilbrey wanted asked during trial, (2) he was unable to review the discovery, and (3) the State had threatened to withdraw the plea offer.

Because Bilbrey claimed that Abbey had made threats, Abbey became a witness. Abbey testified that: (1) he filed the upward departure motion the same day as the suppression hearing; (2) he learned about Bilbrey's request regarding his brother only when reviewing Bilbrey's statements to law enforcement in June 2019 for the suppression hearing; (3) he did not recall who brought up Hansen's charges in the plea discussions the morning of trial; (4) he requested a charging affidavit for Hansen a week before trial; and (5) the affidavit would have included charges for both possession of methamphetamine and paraphernalia. Abbey also testified that Bilbrey appeared nervous during plea negotiations on the day of trial. But Abbey testified *he* initiated the plea negotiations on the day of trial by asking Sheahon's consent to talk with Bilbrey because he knew Bilbrey wanted to hear it from Abbey himself that 111 months was the lowest the State would go on a plea deal. Abbey stated that Bilbrey had first brought up Hansen to the investigators back in June 2019, and that law enforcement had not sent over an affidavit because Bilbrey had agreed to cooperate.

5

Bilbrey explained on cross-examination that he had accepted the plea only because the State had threatened to have his brother arrested and he felt coerced to accept the plea to protect him. He also claimed his attorney did not tell him what was on the videos he had not seen. Bilbrey admitted he was willing to plea to 88-months if the State agreed to place his co-defendant on probation, but he reiterated that he had to make decisions without all the information, that he was being coerced, and that it was unfair.

Sheahon testified he had received 10 to 15 videos in discovery and had shown Bilbrey only one of them. But Sheahon had watched all the videos and had told Bilbrey what they contained. Sheahon confirmed that during plea negotiations on the day of trial, the prosecutor had told Bilbrey that if he rejected the plea and went to trial, the State would swiftly arrest Hansen. Bilbrey worried about his decisions impacting Hansen.

Sheahon testified that Bilbrey had requested the last minute plea negotiations. Abbey had asked Sheahon whether he knew that Bilbrey wanted to avoid his brother being charged, and Sheahon agreed he was aware of Bilbrey's concern. But Sheahon's understanding was that the State would soon prepare an affidavit to charge Hansen—not that Hansen would be arrested soon. Sheahon denied that he had assisted the State in its prosecution of Bilbrey and that he had acted inconsistently with his role as Bilbrey's advocate.

The district court later denied Bilbrey's motion to withdraw his plea. It considered K.S.A. 2018 Supp. 22-3210(d)(1) (stating that a plea, for good cause shown, and within the discretion of the court, may be withdrawn at any time before sentencing) and the three nonexclusive factors set out in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The district court held Bilbrey's plea was fairly and understandingly made, because: (1) Bilbrey and the district court went through the typical plea colloquy at the plea hearing; (2) Bilbrey failed to inform the district court he felt pressured or coerced, and (3) Bilbrey failed to advise the district court he was unhappy with Sheahon's representation.

At the sentencing hearing, the district court found Bilbrey's criminal history score was an E and it denied Bilbrey's renewed motion to withdraw his plea, as well as his motion for a dispositional departure. The district court sentenced Bilbrey to 88 months in prison for aggravated robbery and ordered Bilbrey's sentences for conspiracy to commit robbery and arson to run consecutive to the aggravated robbery sentence. The district court ordered the other counts to run concurrent with Bilbrey's sentence for aggravated robbery. The result was a 111-month sentence with 36 months of postrelease supervision.

Bilbrey timely appeals.

*Did the District Court Err in Denying Bilbrey's Presentence Motion to Withdraw His Plea?*

The sole issue on appeal is whether the district court erred in denying Bilbrey's presentence motion to withdraw his plea.

Generally, this court reviews a district court's denial of a motion to withdraw a guilty or no contest plea for an abuse of discretion. *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

> "'Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.' [Citation omitted.]" 309 Kan. at 380.

We apply that standard here. The movant, Bilbrey, bears the burden to prove the district court erred in denying the motion. 309 Kan. at 380.

A no contest plea, "for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2018 Supp. 22-3210(d)(1). Although K.S.A. 2018 Supp. 22-3602(a) broadly prohibits an appeal "from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere," it does not preclude an appeal from the district court's denial of a motion to withdraw a plea. See *State v. Smith*, 311 Kan. 109, 122, 456 P.3d 1004 (2020) (finding if defendant moves to withdraw plea and district court denies that motion, the Court of Appeals will have jurisdiction to consider an appeal from that denial).

When determining whether a defendant has shown good cause to withdraw a plea before sentencing, the district court should consider at least three factors: (1) whether the defendant was represented by competent counsel, (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36. These factors establish "'viable benchmarks'" for the district court when exercising its discretion. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). But the district court may consider other factors, too. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014); see *Woodring*, 309 Kan. at 381. And not all the *Edgar* factors have to weigh in a defendant's favor for the district court to find good cause. See 309 Kan. at 381. In reviewing the district court's factual findings, this court does not reweigh evidence or reassess witness credibility. *State v. Edwards*, 309 Kan. 830, 836, 440 P.3d 557 (2019).

*Error of Fact*

Bilbrey argues the district court relied on errors of fact and of law in making its decision. His claim of factual error is that substantial competent evidence does not support the district court's finding that the plea negotiations were not coercive. Bilbrey focuses this argument on his assertion that the State, not he, first made his brother an

8

issue in the plea negotiations so the court erred in finding that Bilbrey had approached the State about not charging him.

In support, Bilbrey argues:

- Abbey learned, when preparing for the suppression hearing, of Bilbrey's desire to protect his brother when he reviewed a video of Bilbrey's interrogation;
- Abbey admitted that he had told Bilbrey if he went to trial the State would not honor its promise not to charge Hansen; and
- Abbey testified that he asked law enforcement to prepare a charging affidavit in Hansen's case about a week before Bilbrey's trial date.

Bilbrey asserts that the State initiated the threat to charge his brother, making his plea unduly coercive.

Bilbrey essentially asks this court to reweigh the evidence and reassess the credibility of the witnesses—something this court may not do. See *Edwards*, 309 Kan. at 836. The parties agreed that conversation about Hansen occurred, but testimony varied about when Hansen's potential plight was raised and by whom. Abbey could not recall who brought up Hansen's charges in the plea discussions the morning of trial, but he knew that Bilbrey had first asked about his brother during his statements to law enforcement in June 2019, and Abbey learned of Bilbrey's request when preparing for the suppression hearing. Sheahon testified that Bilbrey had requested the last minute plea negotiations. Because the testimony conflicted, the district court had to determine whose testimony was more credible. The court ultimately credited Abbey's and Sheahon's version of events.

The district court went into considerable detail addressing Bilbrey's coercion argument. First, the district court found Bilbrey's claim that Abbey threatened him with an upward departure during plea negotiations lacked merit because the State had filed its departure motion almost two months before the day of trial. And it rejected Bilbrey's claim that he felt threatened by Abbey on the morning of trial because *Bilbrey* had asked Sheahon if he could speak to Abbey to ask about a minimum sentence recommendation, and to ask Abbey not to charge Hansen in the unrelated case. The district court found that: (1) Abbey discovered the State's failure to charge Hansen while he prepared for Bilbrey's suppression motion hearing; (2) Abbey had requested a charging affidavit from the police department relating to Bilbrey's brother's involvement before the plea negotiations on the morning of trial; (3) Abbey had advised Bilbrey that if he went to trial, the State would not honor Bilbrey's request not to charge Hansen; and (4) Bilbrey answered "no" to questions during the plea hearing whether he felt pressured, threatened, or intimated, or treated unfairly. As a result, the district court found Bilbrey failed to show either Abbey or Sheahon misled, coerced, mistreated, or unfairly took advantage of him.

The district court is the fact-finder and assessor of credibility, and this court must heed that assessment. See *State v. Reu-El*, 306 Kan. 460, 472, 394 P.3d 884 (2017) ("Applying an abuse of discretion standard does not involve reweighing evidence or assessing witness credibility; we defer to district court fact finding in these matters."). Given that standard of review, we find no error of fact; rather, substantial competent evidence supports the district court's finding that neither the State nor Sheahon coerced Bilbrey into taking a plea.

*Error of Law*

Bilbrey next argues that the district court applied the wrong legal standard in determining whether he had competent counsel. He argues the district court improperly

10

used the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)—constitutional ineffective assistance of counsel—when reviewing whether Bilbrey had "competent counsel" under the first *Edgar* factor. Bilbrey contends that the court should have applied a lesser standard—lackluster advocacy. See *Schaefer*, 305 Kan. at 589 ("'[m]erely lackluster advocacy . . . may be plenty to support the first *Edgar* factor and thus statutory good cause for presentence withdrawal of a plea.' *Aguilar*, 290 Kan. at 513.").

Bilbrey points to the district court's finding that the first *Edgar* factor favored the State because the court was "'not aware of any statute or caselaw that requires defense counsel to provide the defendant with the videos to personally view.'" Bilbrey does not claim error in the district court's conclusion that no statute or caselaw required counsel to give him copies of the videos he wanted—wisely so. See K.S.A. 2020 Supp. 22-3212 (l)(1) ("In any criminal proceeding, any property or material that constitutes a visual depiction, as defined in subsection [a][2] of K.S.A. 2020 Supp. 21-5510, and amendments thereto, shall remain in the care, custody and control of either the prosecution, law enforcement or the court."). And no constitutional duty exists to provide discovery to a defendant personally. *State v. Marks*, 297 Kan. 131, 149, 298 P.3d 1102 (2013) (holding that the constitution requires the State to give copies of discovery to defense counsel, but not to the defendant personally).

Bilbrey contends that the question is not whether Sheahon violated some duty to show him the videos but whether Sheahon's advocacy was lackluster. And he argues the way the district court framed the first factor shows it relied on a higher legal standard.

We disagree. True, the district court did not mention "lackluster advocacy" in its decision, but our caselaw does not require the district court to explicitly address lackluster advocacy on the record. See *State v. Aguilar*, 290 Kan. at513. And Bilbrey is

11

correct that "lackluster advocacy" is a lesser standard than the constitutional standard in *Strickland*. See 290 Kan. at 513.

> "It is neither logical nor fair to equate the lesser K.S.A. 22-3210(d) good cause standard governing a presentence plea withdrawal motion to the high constitutional [*Strickland*] burden. The *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet. Merely lackluster advocacy . . . *may be plenty* to support the first *Edgar* factor. . . ." [Emphasis added.] 290 Kan. at 513.

Thus, even if the defendant alleges ineffective assistance of counsel, the district court need only determine whether *competent counsel* represented the defendant and whether withdrawal is appropriate on that factor. See *Aguilar*, 290 Kan. at 513-14; *Edgar*, 281 Kan. at 36.

But the district court did so here. The district court specifically addressed each of Bilbrey's ineffective assistance of counsel claims but one—whether Sheahon's performance was inadequate because he routinely misspelled Bilbrey's name or sent him another person's paperwork. But Bilbrey does not raise this error on appeal, so he abandons that issue. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). We summarize below the district court's reasoning on each of the six claims and find the court's reasoning in each adequate.

(1) *Sheahon abandoned his role as an opposing advocate toward the State*.

The district court found the evidence did not support this argument, based on (1) the number of times Sheahon met with Bilbrey; (2) Sheahon's filing of a successful motion to suppress Bilbrey's statements to law enforcement; (3) Sheahon's reviewing the "video and police reports" evidence with Bilbrey; and (4) Sheahon's engaging in plea negotiations resulting in a favorable result for Bilbrey.

12

(2) *Sheahon refused to file motions Bilbrey suggested.*

The district court again mentioned Sheahon's successful suppression motion, and that, although Bilbrey believed a *Brady* or *Giglio* motion was warranted, Sheahon believed it to be a meritless motion, and Bilbrey failed to present evidence to the contrary. The district court properly found it was Sheahon's decision, not Bilbrey's, whether to file certain motions. See *State v. Rivera*, 277 Kan. 109, 116-17, 83 P.3d 169 (2004) (finding criminal defendants are charged with deciding what plea to enter, whether to waive jury trial, and whether to testify, but strategical and tactical decisions like preparation, the type of defense, and filing motions lie with defense counsel, who is not required to specifically consult with the defendant first).

(3) *Sheahon improperly told Bilbrey he was lucky Sheahon was not the prosecutor because Sheahon would not have given Bilbrey such a good plea deal*.

The district court found Sheahon had to be candid with Bilbrey and express his professional opinion about the charges Bilbrey faced. We agree. Sheahon's statement shows no coercion but only professional persuasion for Bilbrey to take a good plea deal.

(4) *Sheahon refused to bring up Bilbrey's version of the facts during cross-examination at trial*.

The district court found this allegation meritless because the parties did not go to trial, and the court could not speculate whether Sheahon would have brought up Bilbrey's version of events. That ruling is correct.

(5) *Sheahon made it clear that he believed Bilbrey was guilty and that Bilbrey should not rock the boat.*

The district court found Sheahon denied making that statement and that Sheahon was giving Bilbrey his professional opinion on the potential outcome of a trial. The district court specifically found Sheahon to be credible, and we do not reweigh credibility on appeal.

(6) *Sheahon failed to obtain and show Bilbrey the full discovery in his criminal case.*

The district court found: (1) Sheahon discussed with Bilbrey the content of all the videos and the police reports; (2) Bilbrey acknowledged Sheahon had told him what the surveillance video showed for one of the charges; (3) Bilbrey had seen the video of his interrogation by law enforcement; and (4) Bilbrey admitted he had reviewed the typed police reports involving the investigations. The district court found Sheahon's testimony credible and ruled that Sheahon had sufficiently advised the defendant of the evidence against him. Again, we do not revisit credibility calls.

Moreover, Bilbrey fails to cite any authority supporting his assumption that a defense attorney should give a criminal defendant all the discovery materials the State gives the defense attorney. One may just as well assume that local rules prevent attorneys from doing so to protect witnesses whose names or addresses may be disclosed, or for other valid reasons. And Bilbrey also fails to explain how the requested videos, had they been provided, might have affected his decision to enter a plea.

The district court found the evidence weighed in favor of the State on the first *Edgar* factor—Bilbrey was represented by competent counsel. Because the district court

14

properly relied on the "competent counsel" standard in applying the *Edgar* factors, its decision did not rely on an error of law.

The record shows no abuse of discretion in the district court's consideration of the *Edgar* factors or its conclusion that Bilbrey failed to show good cause to withdraw his plea before sentencing.

Affirmed.